UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN T. PENNINGTON,<br><br>    Plaintiff,<br><br>      v.<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC. d/b/a, NEW ENGLAND COMPOUNDING CENTER, et al.<br><br>    Defendants. | Civil Action No.: 12-cv-7179 (RMB)(JS)<br><br>**Civil Action**<br><br>**Document Electronically Filed** |

**DEFENDANT AMERIDOSE, LLC'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

 

**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
1300 Mount Kemble Avenue
Morristown, New Jersey 07962
Phone: (973) 993-8100
Fax: (973) 425-1061
*Counsel for Defendant Ameridose, LLC*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

   A.  PLAINTIFF'S CLAIMS................................................................................................1

   B.  NECC'S REMOVAL AND THE IMPENDING CONSOLIDATION OF
       RELATED CASES INTO A MDL........................................................................................2

ARGUMENT..................................................................................................................................4

   A.  Removal to federal court was proper because the product liability claims against
       the non-diverse healthcare providers are fraudulently joined. ..............................................4

       1.  Based on the Allegations in Plaintiff's Amended Complaint, the Premier
           Defendants Are Not "Manufacturers" or "Product Sellers" Under the NJPLA. ............5

       2.  New Jersey Case Law Further Demonstrates That the Healthcare Defendants
           Do Not Fall Within the NJPLA. ......................................................................................6

   B.  This Court Should Exercise Its Authority to Perfect Diversity Jurisdiction By
       Severing the Medical Malpractice Claims Against the Healthcare Defendants. .................8

       1.  Severing Plaintiff's Negligence Claims Against the Healthcare Defendants is
           Proper................................................................................................................................8

       2.  Severing Plaintiff's Claims Against the Healthcare Defendants Will Not
           Unfairly Prejudice Plaintiff...........................................................................................11

   C.  The Court Should, at a Minimum, Defer Ruling on the Motion to Remand Until
       the Near Certain Designation of this Litigation as an MDL and Selection of the
       MDL Court.........................................................................................................................12

CONCLUSION.............................................................................................................................14

CERTIFICATE OF SERVICE .....................................................................................................15

i

# **TABLE OF AUTHORITIES**

**Cases**

*American Dredging Co. v. Atlantic Sea Con, Ltd.,* 637 F.Supp. 179, 181 (D.N.J. 1986) ............ 10

*Baptista v. Saint Barnabas Medical Center,* 109 N.J.Super. 217, 262 A.2d 902 (App. Div. 1970) ................................................................................................................................................ 6

*Beal v. Merck & Co., Inc.*, 2005 WL 3279285, *1-2 (W.D. Tenn. Dec. 1, 2005) ........................ 13

*Brody v. Overlook Hosp.,* 66 N.J. 448, 332 A.2d 596 (1975) ........................................................ 7

*D'Amico v. Guidant Sales Corp.*, No. 07-301, 2007 WL 3003181 (D.R.I. Oct. 11, 2007) .......... 14

*Dowler v. Medicine Shoppe*, 2007 WL 2907519 (S.D. Ohio, Oct. 3, 2007) .......................... 12, 13

*Falgoust v. Microsoft Corp.*, 2000 U.S. Dist. LEXIS 5417, 2000 WL 462919 (E.D. La. April 19, 2000) ........................................................................................................................................ 13

*Fry Metals Inc. v. Cheng L,* 1995 WL 138945, 1 -2 (D.N.J. 1995) ............................................ 10

*German v. Federal Home Loan Mortgage Corp.,* 896 F. Supp. 1385, 1400 (S.D.N.Y 1995) ....... 9

*Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D.W.Va., 2009) ............................... 11

*In re Briscoe,* 448 F.3d 201, 216 (3rd Cir. 2006) ........................................................................... 4

*Jackson v. Johnson & Johnson, Inc.*, 2001 U.S. Dist. LEXIS 22329, 2001 WL 34048067 (W.D. Tenn. Apr. 3, 2001) .................................................................................................................. 13

*Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009) ...................................... 10, 11

*Lopez v. City of Irvington,* 2008 WL 565776 (D.N.J. 2008) ......................................................... 8

*Magrine v. Krasnica,* 94 N.J. Super 228, 227 A.2d 539 (Cty. Ct. 1967), *aff'd* 100 N.J. Super 223, 241 A.2d 637 (App. Div. 1968)) .............................................................................................. 6

*Moore v. Wyeth-Ayerst Labs.*, 236 F. Supp. 2d 509, 512 (D. Md. 2002) ..................................... 13

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-33 (1989) ....................................... 8

*Newmark v. Gimbel's Inc.,* 54 N.J. 585, 596-598, 258 A.2d 697 (1969) ................................... 6, 7

*Phillips v. Knoll Pharm. Co.*, No. 03-8044 (N.D. Ohio, September 4, 2003) .............................. 11

*Picozzi v. Connor*, 2012 WL 2839820 (D.N.J. 2012) .................................................................. 8, 9

*Sporia v. Pennsylvania Greyhound Lines, Inc.,* 143 F.2d 105, 107 (3rd Cir. 1944) ........................ 8

*Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 111 (1990) ................................................................ 10

*Tobler v. Depuy Orthopedics, Inc.*, No. 2:12-cv-01167, 2012 WL 3598291 (D. Nev. Aug. 17, 2012) ........................................................................................................................................ 14

*Turner v. Bausch & Lomb Inc.*, No. 8:06-cv-1088, 2006 U.S. Dist. LEXIS 48546 (M.D. Fla. July 17, 2006) .................................................................................................................................. 13

*Worrell v. Elliott & Frantz*, 799 F.Supp.2d 343, 350 (D.N.J. 2011) .......................................... 4, 7

*Yearwood v. Johnson & Johnson, Inc.*, No. RDB-12-1374, 2012 WL 2520865 (D. Md. June 27, 2012) (same) ............................................................................................................................. 14

**Statutes**
28 U.S.C. § 1331 ............................................................................................................................. 2

28 U.S.C. § 1332 ............................................................................................................................. 3

28 U.S.C. § 1441(a). ....................................................................................................................... 2

N.J. Stat. § 2A:58C-2 ...................................................................................................................... 4

N.J. Stat. § 2A:58C-8 ...................................................................................................................... 5

**Rules**
Fed. R. Civ. P. 21 ............................................................................................................................ 8

I.      PRELIMINARY STATEMENT

Removal was proper and this Court can exercise jurisdiction over Plaintiff's claims against Defendant Ameridose, LLC ("Ameridose") because there is complete diversity over the **properly joined** defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs. More specifically, there is no colorable basis for Plaintiff's product liability claims against the non-diverse healthcare providers. Plaintiff has fraudulently joined these claims solely to avoid federal jurisdiction.

Further, the Court can and should perfect its diversity jurisdiction by severing Plaintiff's remaining negligence (i.e., medical malpractice) claims against the non-diverse healthcare providers because those claims focus on different conduct, by different parties, at different times, and in different locations than Plaintiff's product liability claims against Ameridose. Severing Plaintiff's negligence claims against the non-diverse healthcare providers and allowing Plaintiff's product liability claims against Ameridose to proceed in federal court will also help accomplish the goals of judicial economy and consistency. Achieving consistency is particularly important given the unopposed petition for consolidation scheduled for hearing on January 31, 2013 before the Judicial Panel for Multidistrict Litigation.

Thus, Ameridose respectfully requests that the Court deny Plaintiff's Motion to Remand for the reasons set forth more fully below.

II.     STATEMENT OF FACTS

A.    PLAINTIFF'S CLAIMS

Plaintiff Brian Pennington filed his initial Complaint on October 16, 2012 in the Superior Court of New Jersey, Cumberland County, Law Division. Plaintiff's Complaint alleges personal

injury as a result of being injected with methylprednisolone acetate ("MPA") that was subsequently recalled by defendant New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC").  On November 9, 2012, Plaintiff filed an Amended Complaint adding Ameridose and Alaunus Pharmaceutical, LLC as defendants on the ground that they allegedly share the same owners as NECC.  While there was common ownership between Ameridose and NECC, the two companies produced a separate set of products at different physical facilities.  Ameridose never manufactured, compounded, distributed or sold MPA.  As to NECC, Ameridose, and Alaunus, Plaintiff asserts claims for Violations of the New Jersey Product Liability Act (Count I), Negligence (Count II), and Breach of Express Warranty (Count IV).  (*See* Pl.'s Am. Compl.).

Plaintiff also sued four, non-diverse defendants – Vannette Perkins, M.D. and Professional Pain Management Associates ("the Pain Management Defendants"), and Premier Orthopaedic and Sports Medicine Associates of Southern New Jersey, LLC, also trading as Premier Orthopaedics Associates and Premier Orthopaedic Associates Surgical Center ("the Premier Defendants").  As against the Premier Defendants, Plaintiff alleges Violations of the New Jersey Product Liability Act (Count I) and Negligence (Count III).  As against the Pain Management Defendants, Plaintiff alleges only Negligence (Count III).[1]

### B.  NECC'S REMOVAL AND THE IMPENDING CONSOLIDATION OF RELATED CASES INTO A MDL.

NECC, with the consent of Ameridose and Alaunus, timely removed Plaintiff's Amended Complaint on November 19, 2012, on the grounds that Plaintiff's claims present a "central and substantial federal question" under 28 U.S.C. § 1331.  (Notice of Removal at ¶¶ 6-14.)  NECC

---

[1] Plaintiff also sued several "John Doe" Corporations and Physicians.  "For purposes of removal ... the citizenship of parties sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).

2

also noted that this Court has diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* at ¶¶ 15-22.) With respect to diversity jurisdiction, NECC asserted that Plaintiff fraudulently joined medical malpractice and product liability claims against the non-diverse defendants solely to defeat diversity jurisdiction. (*Id.* at ¶ 23.) In the absence of the fraudulently joined claims, the two pillars of diversity jurisdiction – (1) complete diversity of citizenship between Plaintiff and NECC, Ameridose and Alaunus;[2] and (2) an amount in controversy exceeding $75,000 – are satisfied. (*Id.* at ¶¶ 24.) Plaintiff filed a motion to remand on December 11, 2012.[3]

In the background of the dispute presently before this Court is the fact that there have been a large number of suits filed against NECC and/or Ameridose seeking recovery for meningitis-related injuries. Currently there are approximately 136 such cases in federal court and 17 cases in state courts – many of which will be removed. Forty-four cases name Ameridose. A petition for consolidation has been filed with the Judicial Panel on Multidistrict Litigation, and no party has opposed MDL certification. This litigation has also resulted in substantial publicity and public inquiry, including a Congressional hearing at which the Commissioner of the United States Food and Drug Administration ("FDA") testified about the regulatory issues involved in this case and the scope of the FDA's potential authority over pharmaceutical compounders. Simply put, the present case is a small part of a larger and growing litigation.

---

[2] NECC is and was, at all relevant times, incorporated under the law of, and authorized to conduct business in the Commonwealth of Massachusetts. (Notice of Removal, ¶¶ 7, 16). Ameridose is a Massachusetts Limited Liability Company with a principal place of business located at 205 Flanders Road, Westborough, MA 01581. (Ameridose Answer to Pl.'s Am. Compl. ¶5). Plaintiff also has alleged that Alaunus is a Commonwealth of Massachusetts corporation, with its principle place of business in the Commonwealth of Massachusetts. (Pl.'s Am. Compl. ¶ 7).

[3] NECC filed for Bankruptcy on December 21, 2012. Thus, all proceedings are stayed as to NECC. Proceedings as to Ameridose, however, are not stayed.

### III.     ARGUMENT

A.   **REMOVAL TO FEDERAL COURT WAS PROPER BECAUSE THE PRODUCT LIABILITY CLAIMS AGAINST THE NON-DIVERSE HEALTHCARE PROVIDERS ARE FRAUDULENTLY JOINED.**

Plaintiff does not dispute that the joinder of non-diverse defendants solely for the purpose of defeating diversity jurisdiction does not divest a federal court of jurisdiction.  It is also undisputed that the addition of non-diverse defendants is deemed fraudulent "if there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."  *In re Briscoe,* 448 F.3d 201, 216 (3rd Cir. 2006).  Thus, all parties agree that when a district court determines that joinder is fraudulent, it can "disregard for jurisdictional purposes the citizenship of the non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction."  *Id.* at 216.

Here, there is no colorable basis for Plaintiff's product liability claims against the non-diverse Premier Defendants.  Under the New Jersey Product Liability Act ("NJPLA"), product liability claims may be brought only against "manufacturers" and "product sellers" of products.  N.J. Stat. § 2A:58C-2 ("A **manufacturer** or **seller** of a product shall be liable in a product liability action…") (emphasis and edit supplied); *Worrell v. Elliott & Frantz*, 799 F.Supp.2d 343, 350 (D.N.J. 2011) (to plead a prima facie cause of action under NJPLA, a plaintiff must show that the defendant was a "manufacturer" or a "product seller.")

As demonstrated in detail below, the allegations within the four corners of Plaintiff's Amended Complaint demonstrate that the Premier Defendants do not, under any circumstances, fall within the NJPLA's clear and unambiguous definition of "manufacturer" or "product seller."  Well-established case law further demonstrates that the Premier Defendants cannot, under any

4

circumstances, be considered "manufacturers" or "product sellers."  Contrary to Plaintiff's contention, discovery is not needed or warranted to address this issue.  (*See* Pl.'s Mot. to Remand at ¶ 26.)  When Plaintiff's product liability claims against the Premier Defendants are judged by the appropriate standard, it is evident that they have been fraudulently joined.

> 1. **Based on the Allegations in Plaintiff's Amended Complaint, the Premier Defendants Are Not "Manufacturers" or "Product Sellers" Under the NJPLA.**

The NJPLA defines "manufacturer" as follows:

> (1) Any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product;
>
> (2) A product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale;
>
> (3) Any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or
>
> (4) A United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

N.J. Stat. § 2A:58C-8.  "Product sellers" include persons who, in the course of business "conducted for that purpose," sell, distribute, blend, package, label, or market products.  *Id.* Importantly, N.J. Stat. § 2A:58C-8 specifically exempts from the definition of a "product seller" "provider[s] of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services."  N.J. Stat. § 2A:58C-8.

Plaintiff's Amended Complaint does not allege any facts that would bring any of the Premier Defendants within the definition of "manufacturer" or "product seller."  There is no allegation that either of the Premier Defendants played any role in the design, formulation,

5

creation, packaging or construction of MPA.  Indeed, Plaintiff did not allege that a sale of the MPA even occurred.  Rather, he alleged only that Dr. Perkins "administered" MPA to him. (Pl.'s Am. Compl., ¶23.)   Further, Plaintiff described the Premier Defendants as "corporations," "medical institutions" and "medical facilities," each of which held "itself and its agents out" as "skillful and qualified to attend, care for and treat and render medical care and services to patients." (*Id.* at ¶¶ 11-16.)

      **2.    New Jersey Case Law Further Demonstrates That the Healthcare Defendants Do Not Fall Within the NJPLA.**

Consistent with the unambiguous definitions of "manufacturer" and "product seller" in the NJPLA, New Jersey courts have consistently held that medical professionals cannot be strictly liable for allegedly defective medications.  In *Magrine v. Krasnica,* 94 N.J. Super 228, 227 A.2d 539 (Law Div. 1967), *aff'd* 100 N.J. Super 223, 241 A.2d 637 (App. Div. 1968))*,* for example, the plaintiff was injured when the hypodermic needle being used by his dentist broke. The *Magrine* Court refused to apply strict liability to the dentist stating that such a theory was not applicable because the essence of the relationship with his patient was the furnishing of professional skill and services.  *Id.* at 241.  The New Jersey Supreme Court agreed with this reasoning in *Newmark v. Gimbel's Inc.,* 54 N.J. 585, 596-598, 258 A.2d 697 (1969). In explaining why strict liability could be imposed on a hairdresser but not a physician,  the Court explained that "[t]he use of instruments, or the administration of medicines or the providing of medicines for the patient's home consumption cannot give the ministrations the cast of a commercial transaction." *Id.*   It further held that liability of the "professional man" "must be tested by principles of negligence, i.e., lack of due care and not by application of the doctrine of strict liability in tort."  *Id.*; *see also, Baptista v. Saint Barnabas Medical Center,* 109 N.J.Super. 217, 262 A.2d 902 (App. Div. 1970) (hospital not strictly liable for blood transfusion reaction

6

that caused decedent's death); *Brody v. Overlook Hosp.,* 66 N.J. 448, 332 A.2d 596 (1975) (hospital not strictly liable for decedent's development of hepatitis following transfusion of tainted blood).

The Supreme Court of New Jersey further noted that strong public policy weighs against the application of strict liability to claims against healthcare providers because:

> [T]he nature of the services, the utility of and the need for them, involving as they do, the health and even survival of many people, are so important to the general welfare as to outweigh in the policy scale any need for the imposition on dentists and doctors of the rules of strict liability in tort.

*Feldman,* 97 N.J. at 443 (citing *Newmark,* 54 N.J. at 587).

Accordingly, both the unambiguous language of the NJPLA and the well-established New Jersey case law dictate that Plaintiff has not asserted a colorable product liability claim against the Premier Defendants under N.J. Stat. § 2A:58C 1-8, which provides the sole authority for prosecuting product liability claims in New Jersey. *See Worrell,* 799 F. Supp.2d at 350 ("If a claim falls within the scope of the [NJ]PLA, the sole method to prosecute the claim is under the act."). Plaintiff's claims against the Premier Defendants are solely based upon Dr. Perkins' transactions with Plaintiff, and the essence of these transactions was the delivery of medical care and services based upon her professional judgment – not the manufacture, design, production or sale of a drug. This Court is within its authority, therefore, to find that Plaintiff has fraudulently joined these claims against the Premier Defendants.

**B.    THIS COURT SHOULD EXERCISE ITS AUTHORITY TO PERFECT DIVERSITY JURISDICTION BY SEVERING THE MEDICAL MALPRACTICE CLAIMS AGAINST THE HEALTHCARE DEFENDANTS.**

Plaintiff's heavy reliance on her remaining negligence (medical malpractice) claims against the Healthcare Defendants[4] similarly fails to divest this Court of jurisdiction. "Rule 21 invests district courts with authority to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832-33 (1989). Specifically, Rule 21 provides:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Not only does Rule 21 give district courts the power to sever dispensable parties, but district courts are given "broad discretion" to do so. *Lopez v. City of Irvington,* 2008 WL 565776, *2 (D.N.J. 2008). Severing a party is not limited to circumstances where the party is improperly joined under Rule 20. "[T]he Rule may be invoked to prevent prejudice or promote judicial efficiency." *Picozzi v. Connor*, 2012 WL 2839820, *5 (D.N.J. 2012). District courts may also properly sever a claim to protect a defendant's procedural rights. *Sporia v. Pennsylvania Greyhound Lines, Inc.,* 143 F.2d 105, 107 (3rd Cir. 1944).

### 1.    Severing Plaintiff's Negligence Claims Against the Healthcare Defendants is Proper.

When determining whether to sever claims against a party, district courts are to consider the following factors:

---

[4] The phrase "Healthcare Defendants" refers to all four non-diverse defendants: Vannette Perkins, M.D., Professional Pain Management Associates, Premier Orthopaedic and Sports Medicine Associates of Southern New Jersley, LLC, and Premier Orthopaedic Associates Surgical Center, LLC.

> (1) Whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Picozzi*, 2012 WL 2839820 at *5 (citing *German v. Federal Home Loan Mortgage Corp.,* 896 F. Supp. 1385, 1400 (S.D.N.Y 1995)).

Here, Plaintiff's medical malpractice claims against the Healthcare Defendants focus on **different** conduct, by **different** parties, at **different** times, and in **different** locations than Plaintiff's product liability claims against NECC (and Ameridose). For example, Plaintiff's claims against Ameridose involve underlying issues that allege manufacture of MPA (which Ameridose never did), compliance with federal "good manufacturing practices, and the adequacy of the warnings provided with MPA. To the contrary, Plaintiff's claims against the Healthcare Defendants involve issues relating to the Healthcare Defendants' conduct in the administration of MPA. (*See* Pl.'s Mot. to Remand at ¶¶ 29-30) (arguing that Healthcare Defendants failed to obtain an individualized prescription for Plaintiff and should have known that the MPA was contaminated due to "visible black particulate matter"). Thus, Plaintiff's product liability claims focus on conduct at the manufacturing plant, while Plaintiff's medical malpractice claims focus on the Healthcare Defendants' conduct at the point of administration.

Similarly, Plaintiff's claims against Ameridose will require the testimony of numerous individuals involved in the design, formulation, and manufacture of MPA, as well the FDA's inspection of the NECC and Ameridose facilities. These witnesses will in all likelihood be corporate representatives and employees of the manufacturing facilities, none of which are in New Jersey. These claims will also be based on documents from the facilities relating to the manufacturing process for the batches of MPA subject to the recall. To the contrary, Plaintiff's

9

negligence claims against the Healthcare Defendants will require testimony from Plaintiff, Dr. Perkins, and employees of the other Healthcare Defendants. Discovery of these claims can be completed through depositions of a small number of New Jersey witnesses. As a result, Plaintiff's product liability claims require different witnesses and documentary proof than her negligence claims against the Healthcare Defendants.[5]

Other district courts have severed medical malpractice claims from product liability claims under similar circumstances. In *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), for example, the plaintiff asserted product liability claims against a pharmaceutical company (Baxter) and claims for medical negligence against healthcare providers. *Id.* at 872. The court concluded that malpractice claims were independent from the product liability claims, and that "the resolution of a claim against [the health care provider] would not necessarily resolve the Josephs' claim against Baxter." *Id.* "Medical malpractice allegations," the court explained, "differ from the Josephs' products liability claim which focuses on Baxter's conduct in designing, manufacturing, labeling, and recalling tainted Heparin." *Id.* For that reason, the court concluded, "the Healthcare Defendants do not meet any of the elements required to be deemed necessary." *Id.*; *see also, Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 111 (1990) (physician tortfeasor does not need to be joined in a product liability action); *Hughes v. Sears,*

---

[5] The cross claim asserted by Co-Defendants Vanette Perkins, M.D. and Professional Pain Management Associates ("Pain Management Defendants") does not destroy diversity jurisdiction. Diversity of citizenship must exist at the time the action was filed. *Fry Metals Inc. v. Cheng L.,* 1995 WL 138945, 1 -2 (D.N.J. 1995) *citing American Dredging Co. v. Atlantic Sea Con, Ltd.,* 637 F.Supp. 179, 181 (D.N.J. 1986). Here, diversity jurisdiction existed at the time Plaintiff filed her Complaint because Plaintiff's product liability claims against the Premier Defendants were fraudulently joined, and diversity jurisdiction is perfected by severing the negligence claims against the Healthcare Defendants under Fed.R. Civ.P. 21. Under this scenario, the Pain Management Defendants' cross claim for contribution and indemnity, falls squarely within the federal court's ancillary jurisdiction, and no independent basis of jurisdiction need be established. *Rowe v. Johns-Manville Corp.* 658 F.Supp. 122, 124 (E.D.Pa.,1987) citing *Field v. Volkswagenwerk AG,* 626 F.2d 293, 299 (3d Cir.1980). While such an outcome may require the Pain Management Defendants to litigate claims in two courts, any inconvenience is substantially outweighed by the prejudice Ameridose will face in having to litigate claims in multiple venues in five different states. Moreover, diversity jurisdiction itself and the interest federal district courts have in consolidating and coordinating complex litigation outweighs any inconvenience the Pain Management Defendants may incur.

*Roebuck and Co.*, 2009 WL 2877424 (N.D.W.Va., 2009) (district court severed plaintiff's product liability claims from medical negligence claims finding that the two claims were not part of the same transaction or occurrence); *Phillips v. Knoll Pharm. Co.*, No. 03-8044, slip op. at 2-3 (N.D. Ohio, September 4, 2003) (dropping physician defendants under Rule 21 to perfect diversity jurisdiction).

        2.      **Severing Plaintiff's Claims Against the Healthcare Defendants Will Not Unfairly Prejudice Plaintiff.**

*Joseph* disposes of any argument that severance will unfairly prejudice Plaintiff. As the court explained in *Joseph*, a plaintiff's ability to proceed with his claims against healthcare provider defendants in state court is an "adequate remedy," and while "fighting on two fronts will no doubt be inconvenient," the need to maintain two lawsuits is not "unfairly or unduly prejudicial." *Joseph*, 614 F. Supp. 2d at 873.

To the contrary, Plaintiff stands to benefit from maintaining this case in federal court. As mentioned previously, there has been no opposition to the petition for consolidation currently pending before the Judicial Panel on Multidistrict Litigation. In the event the petition is granted, many cases will be transferred to the MDL. As the Court reasoned in *Joseph*,, "plaintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery." *Id.* Indeed, Plaintiff's counsel may not need to even attend the MDL proceedings. Moreover, any inconvenience to Plaintiff is substantially outweighed by the possible prejudice to Ameridose should Plaintiff's claims against the malpractice defendants *not* be severed, since "if remand were found in these circumstances to be necessary, [Ameridose] would potentially be fighting many more than just two fronts." *Id.* In other words, remanding this case will provide yet another court, discovery schedule, set of local

procedures, and possibly inconsistent rulings that Ameridose will be forced to juggle while also defending the cases in the MDL.

C.   **THE COURT SHOULD, AT A MINIMUM, DEFER RULING ON THE MOTION TO REMAND UNTIL THE NEAR CERTAIN DESIGNATION OF THIS LITIGATION AS AN MDL AND SELECTION OF THE MDL COURT.**

Plaintiff incorrectly downplays the relevance and importance of the large volume of similar cases pending in federal courts. One of the hardest tasks for the court eventually chosen to lead the MDL will be to coordinate whatever state court litigation exists, especially given the disparate timetables at play in the growing number of cases arising from the core allegations in this case. Compounding this difficulty is the likely possibility that different judges, including the future appointed MDL judge, may see this issue differently, opening the door to the potential for conflicting rulings that will create significant confusion in the future of this litigation. Accordingly, all parties and courts stand to obtain substantial benefit from having a single arbiter – the MDL court – rule on remand motions.

Given the substantial benefits of judicial consistency and economy that will result from deferral, district courts have repeatedly deferred remand motions to the MDL court. In *Dowler v. Medicine Shoppe*, 2007 WL 2907519, at *2 (S.D. Ohio, Oct. 3, 2007), for instance, the United States District Court for the Southern District of Ohio acknowledged that it had the discretion to issue a stay, and rejected the plaintiffs' argument that their pending remand motion should be addressed before the case could be stayed:

> In considering the aforementioned factors, the Court finds that a stay is necessary in this case. ***The case may possibly be transferred as a part of an MDL case and the very purpose of MDL transfers is to further judicial economy and to eliminate the potential for conflicting pretrial rulings.*** Defendants in this case may face a hardship if forced to defend this action in two separate forums. Plaintiffs, however, do not appear to be facing any hardship right now. ***It appears the decision as to whether the case will be transferred is expected rather quickly and therefore there will be no harm in not ruling on Plaintiff's pending motions***

12

> *until after a decision by the MDL Panel.* Finally, as previously discussed, ***the interests in judicial economy and consistent pretrial rulings outweigh all other interests and justify issuing a stay in this case until a decision is rendered by the MDL Panel.***

*Id.* (emphasis added). As in *Dowler*, the JPML is scheduled to hear the unopposed certification petition in this litigation on January 31, 2013, and a ruling is likely to follow within 7-10 days of the hearing. Thus, in addition to fostering judicial economy and consistency, deferring to the MDL court will not create any undue delay or prejudice to Plaintiff.

Similarly, on more than 25 occasions, the Western District of Tennessee issued stays despite the presence of pending remand motions:

> Although some courts have opted to rule on pending motions to remand prior to the MDL Panel's decision on transfer …, ***there are many more that have chosen to grant a stay, even if a motion to remand has been filed***.
>
> . . . .
>
> The Court finds that having the jurisdictional issues decided in one proceeding will promote judicial economy and conserve judicial resources. In addition, the court finds that any prejudice to the plaintiff would be minimal. However, in the absence of a stay, the risk to Merck of duplicative motions and discovery is significant.

*Beal v. Merck & Co., Inc.*, 2005 WL 3279285, *1-2 (W.D. Tenn. Dec. 1, 2005) (emphasis added); *see also Turner v. Bausch & Lomb Inc.*, No. 8:06-cv-1088, 2006 U.S. Dist. LEXIS 48546 (M.D. Fla. July 17, 2006) (recognizing that the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case to the MDL panel"); *Jackson v. Johnson & Johnson, Inc.*, 2001 U.S. Dist. LEXIS 22329, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) (same); *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (same); *Moore v. Wyeth-Ayerst Labs.*, 236 F. Supp. 2d 509, 512 (D. Md. 2002) (same); *Falgoust v. Microsoft Corp.*, 2000 U.S. Dist. LEXIS 5417, 2000 WL 462919 (E.D. La. April 19, 2000) (same); *Tobler v. Depuy Orthopedics, Inc.*, No. 2:12-cv-01167, 2012 WL 3598291, at *2

13

(D. Nev. Aug. 17, 2012) (deferral to an MDL court prudent to promote judicial economy and avoid the risk of inconsistent judgments where multiple analogous cases present common legal issues); *Yearwood v. Johnson & Johnson, Inc.*, No. RDB-12-1374, 2012 WL 2520865, at *4 (D. Md. June 27, 2012) (same).

Here, given the likelihood that the JPML will certify this litigation for MDL treatment, ruling on Plaintiff's Motion to Remand prior to consolidation could lead to inconsistent decisions, which would undermine the principles of uniformity, consistency, predictability, and judicial efficiency that underlie the MDL system. *Cf. D'Amico v. Guidant Sales Corp.*, No. 07-301, 2007 WL 3003181 (D.R.I. Oct. 11, 2007). Deferring to the anticipated MDL court would help to avoid the potential for conflicting rulings. Moreover, deferring to the MDL court would aid in equalizing the timetables of similar cases, facilitating a greater possibility for coordination among state court judges even if the cases are ultimately remanded. As a result, the Court should defer ruling on the Motion to Remand to the anticipated MDL court.

## CONCLUSION

For the foregoing reasons, Defendant Ameridose, LLC respectfully requests that the Court deny Plaintiff's Motion to Remand or, in the alternative, defer this issue to the MDL court.

Respectfully submitted,

*s/ Walter F. Timpone*
Walter F. Timpone
Walter R. Krzastek
**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
Ph: 973.425.8701
Fx: 973.425.0161
*Attorneys for Defendant Ameridose, LLC*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been filed with the Clerk of the Court on January 8, 2013 using the ECF system that sent notification of this filing to all ECF-registered counsel of record via e-mail generated by the Court's ECF system.

*s/ Walter F. Timpone*
*Attorney for Defendant Ameridose, LLC*